# NATHANIEL W. BROME *vs.* CLEMENT H. DORSEY ET AL., BOARD OF SUPERVISORS OF ELECTIONS, ETC.

*Elections and Voters—Power of Board of Supervisors of Elections in a County to Change the Boundaries and Polling Places of Election Precincts.*

The Act of 1872, ch. 77, authorized the Commissioners of Calvert County to re-district or increase the number of election precincts in said county. In that year the Commissioners established two voting precincts in the first district of the county with a certain division line between the two. Code, Art. 33, sec. 117A, authorizes the Board of Supervisors of Elections of the several counties, at their discretion, to subdivide any of the election districts or precincts having more than 600 voters, to establish the boundaries of the subdivisions with new or separate polling places, and then provision is made for the preparation of registry books containing the names of the voters in two new precincts. It is also provided that the Board of Supervisors shall appoint the place of registration and the polling place in each precinct of their county. The Supervisors of Elections of Calvert County passed an order subdividing the first election district of that county into two new precincts, differing a little in size and shape from the two precincts which had composed that district since 1872, by changing the division line between the two and designating a new polling place, the boundaries of the election district as a whole being left undisturbed, and directed their clerk to prepare a registry book for each of the new precincts: *Held,* that under the Code the supervisors are authorized not only to subdivide election districts by providing for additional precincts, but also to change the area and boundaries of those already in existence and to establish new polling places and to have new registry books prepared for the new precincts, and that this authority conferred by the Code is a continuing one to be exercised from time to time as public convenience may require.

Appeal from the Circuit Court for Calvert County (BRISCOE, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*John P. Poe* and *John B. Gray*, for the appellant.

Under sec. 69 of the Local Code of Calvert County the bounds and limits of the three election districts are fixed, and elections are required to be held at the place established by law. Under the authority conferred by sec. 70, the County Commissioners divided the first election district into two precincts, established the divisional lines and fixed the polling places.

No authority is conferred upon the Board of Supervisors to change these divisional lines or to alter the established polling places: hence, the recent action of the appellees is altogether unauthorized, and inasmuch as it will cause great confusion and irreparable injury if allowed to be put into effect and will invalidate altogether the election in both precincts of the first election district, it ought not to be permitted to stand.

As a rule, the place for holding an election must be fixed by proper authority, before a valid election can be held. And when the place has been so fixed, the election must be held there and not at some other place. There is less latitude allowed in changing the place of holding an election than in varying the time of holding it, and it is a general rule, to which there are few exceptions, that an election held at an improper place is absolutely void, without proof of any fraud or injury. There are some decisions, however that cannot be reconciled with this rule. 10 *Am. & Eng. Encycl.*, 684, and cases there cited.

The Board of Supervisors of Election had no authority to change the *place* already established by law. They could appoint a place, that is a building or room at or in Saint Leonards, which they could cause "to be fitted up, warmed, lighted and cleaned," but they could not appoint one out of or away from Saint Leonards. The word "place" in the local law, and the word "place" in sec. 10 of Art. 33, do not mean the same thing. In the local law it clearly means a certain space, that is the village of Saint Leonards. In sec. 11 of Art. 33, it clearly means a building or room, that is a building or room within the village of Saint

Leonards.    Place is a very indefinite term. · It is applied to
any locality limited by boundaries, however large or however
small.· It may be used to designate a town or a small part of
a town.    The extent of the locality designated by it must
generally be determined by the connection in which it is used.
*Am. & Eng. Enc. of Law*, vol. 18, p. 462 (1 ed.)

The plaintiff does not seek to restrain the exercise by the
appellees, of their judgment and discretion in matters confided·
by law to their decision, nor to compel them to exercise their
judgment and discretion in a particular way.    But the appli-
cation is to forbid the attempted exercise by them of authority
not vested in them,· and prevent the doing of unlawful acts,
the doing of which will deprive the plaintiff and many other·
lawful voters similarly situated of their right. to vote—render
absolutely void the approaching election in their precinct,· if
not in the whole of the first election district of Calvert, and
inflict upon him and them an irreparable injury for which there
is not only no adequate remedy at law, but no other remedy
than·a mandatory injunction.    Code, Art. 16, sec.· 177; *School
Commrs.* v. *School Commrs.*, 77 Md. 283; *M. & C. C.* v. *Gill*,
31 Md. 376; *Deems* v. *M. & C. C.*, 80 Md. 164; *McCrary on
Elections*, sec. 319.

The plaintiff is not asking a Court of equity to determine
an election contest.    *Hamilton* v. *Carroll*, 82 Md. 326, nor to
enjoin the proper officers from holding an election.    But the
application is to prohibit the appellees from unlawfully altering
the lines of election precincts and unlawfully changing the
polling place fixed by law—matters over which they have no
lawful control or authority whatever, and in respect of which
their announced and published action will be absolutely *ultra
vires*.    In such cases equity has jurisdiction.

*Edgar H. Gans* and *J. Frank Parran*, for the appellees.

Under the Act of 1901, ch. 10 (Code, Art. 33, sec. 117A),
it seems that the defendants, constituting the Board of Elec-
tion Supervisors for Calvert County, had ample power and
authority to make the change mentioned in the bill.    The

only alleged reason to be gathered inferentially from the state-
ments of the bill against such change is that the change will
be inconvenient for the plaintiff and some others.    (See Code,
Art. 33, sec. 11.)    This, however, is evidently a matter purely
in the discretion of the Board of Supervisors.    The conclusion
of paragraph five of the bill, that by virtue of the change the
plaintiff will be deprived of his right to vote from a legal reg-
istry, is evidently not justified.    It is not pretended that he
will be deprived of his right to vote at the new voting place.
Upon the merits, therefore, it is, we think, entirely apparent
that the plaintiff has no just cause for complaint.

However it may be as to the merits of the case, it is very
certain that a Court of equity has no jurisdiction over a con-
troversy of this kind, which is purely *political* in its nature, and
does not involve any *civil property rights*.    The authorities for
this proposition are numerous and harmonious.    2 *Bouvier
Law Dic.*,597; *Hardesty* v. *Taft*, 23 Md. 512; *Hamilton* v.
*Carroll*, 82 Md. 326; *Chappell* v. *Stewart*, 82 Md. 323; *State*
v. *Kirkley*, 29 Md. 185; *State* v. *County Commissioners of Balto.
Co.*, 29 Md. 516; *Anderson* v. *Boker*, 23 Md. 531; *Clayton* v.
*Carey*, 4 Md. 26–30; *King* v. *Hammill*, 97 Md. 103; *Green* v.
*Mills*, 69 Fed. 852; 30 L. R. A. 90; *Fletcher* v. *Tuttle*, 151
Ill. 41; 25 L. R. A. 143; *Ex-parte Sawyer*, 124 U. S. 200;
*Taylor* v. *Kercheval*, 82 Fed. 497; *Jones* v. *Montague*, 194 U.
S. 147; *Selden* v. *Montague*, 194 U. S. 153.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Cal-
vert County dismissing a bill for an injunction filed by the ap-
pellant against the appellees who are the Supervisors of Elec-
tion for that county.

The substantial allegations of the bill are

(1) That the plaintiff is a duly registered voter of the sec-
ond election precinct of the first election district of Calvert
County, and as such is entitled to vote at the coming election,
to be held on November the 8th of the present year.

(2) That the division line between the two precincts as es-

tablished by law about the year 1872 has ever since then remained unchanged and that Saint Leonards has during all of that time been used as the place for holding election in the second precinct and that it is as near the centre of the voting population of that precinct and as convenient to the greatest number of voters as is practicable.

(3) That on June 14th, 1904, the appellees as the Board of Supervisors of Election passed an order to change the division line between the two precincts and to establish an entirely new line and "to change the voting place" of the second precinct from St. Leonards to Mutual.

(4) That by this change of the division line between the precincts the plaintiff and many other legal voters of the second precinct will be thrown into the first one and thereby be deprived of their legal right to vote in second precinct at the coming election and will further be deprived of their legal right to vote at St. Leonards which the bill alleges to be the legal place for voting in the second precinct.

(5) The plaintiff charges, on information, that the defendants have authorized the clerk to the board to transcribe from the registry books of the two precincts such names as may appear to be entitled to vote in the proposed new divisions into other books which are to be furnished by the appellees to the Judges of Election of the respective precincts to be used as registry books at the coming election whereby the plaintiff and others will be deprived of their right to vote from legal registry books.

The bill then prays for an injunction to restrain the appellees *first* from changing the division lines between the two precincts, *secondly*, from "moving the voting place" of the second precinct from St. Leonards to Mutual and *thirdly* from using any copies made by the supervisors or their clerk, as registry books at the coming election in the two precincts. There is also a prayer for general relief. A copy of the order of the supervisors making the change in the division line between the two precincts and establishing Mutual as the polling place of the second precinct is filed with the bill as an exhibit. The

appellees demurred to the bill and the Court passed the decree appealed from sustaining the demurrer.

Not only were the merits of the case presented by the bill discussed by counsel with force and ability at the hearing of the appeal but it was contended by the appellees that a Court of equity had no jurisdiction to entertain the suit because it did not affect any civil or property right but sought to enjoin action which was polltical or governmental in its nature and affected only a political right of the appellant. As we have come to the conclusion that the case presented by the bill does not upon its merits entitle the appellant to the relief for which he asks, we deem it unnecessary to pass upon or to further notice the question of the jurisdiction of the Circuit Court to entertain the bill.

The bill broadly avers that the division line between the two election precincts under consideration was established about the year 1872, and has remained unchanged ever since then, but it does not say how or by whom the line was thus established nor allege that it was so established as to be exempt from subsequent change of location by Boards of Election Supervisors in the exercise of appropriate statutory powers. We are informed by the appellant's brief that the subdivision of the election district into two precincts with an established polling place in each precinct was made by the County Commissioners, under the provisions of sec. 70 of Art. 5 of the Code of Public Local Laws, title Calvert County, sub-title Election Districts, where, as the bill alleges the elections have for many years been held. This section, which forms part of the Act of 1872, ch. 77, is as follows:

70. The County Commissioners are authorized to re-district or increase the number of election precincts in said county, if, in their judgment, it may seem needful and necessary.

The effect of the passage by the appellees of the order complained of was to subdivide the first election district of Calvert County into two new precincts differing slightly in size and shape from the precincts which had theretofore composed that district, and to designate a new polling place for

the second precinct.　This subdivision was effected by chang-
.ing the division line between the precincts.　The boundaries
of the *election district* were left entirely undisturbed.　The bill
also alleges that the appellees authorized their clerk to pre-
pare a registry book for each of the new precincts containing
the names of the persons entitled to vote in that precinct.

If we now turn to the law to ascertain the power of the ap-
pellees as Supervisors of Election to deal with the situation
we find that although sec. 117 of Art. 33 of the Code as it
now stands, provides that "The boundaries of the *election dis-
tricts* of the counties and of the wards of Baltimore City shall
remain as now established by law," it authorizes the Board of
Supervisors of Elections of Baltimore City to change the elec-
tion *precincts* from time to time.　Section 117A of the same
Article confers similar powers upon the Boards of Supervis-
ors of Elections of the several counties.　As this section is
vital to the present case we here insert it in full.　It is as fol-
lows: "As soon after the passage of this Act as shall be rea-
.sonably practicable, it shall be the duty of the Boards of Su-
pervisors of Elections of the several counties to examine the
boundaries of the several election distrcts and election pre-
cincts in their respective counties, *and whenever in their judg-
ment and discretion, it shall be expedient,* for the convenience of
the voters to subdivide any of said election districts or elec-
tion precincts having a number of voters in excess of six hun-
dred, they are hereby empowered and authorized to make
such subdivisions, and to establish the boundaries of such sub-
divisions in such a way as to facilitate and expedite the casting
of their ballots by the voters thereof, either by a designation
of an entirely new and different polling place, or by providing
for two separate polling places at or near the former polling
place.　Whenever, in the exercise of the discretion conferred
upon the several Boards of Supervisors of Elections by this
section, they shall subdivide any election district or election
precinct, they shall appoint officers of registration and judges
and clerks of election therefor, as in this Article provided, who
shall have all the powers, perform all the duties, be subject to

all responsibilities and be liable to all the penalties prescribed
in this Article for officers of registration, judges and clerks of
election.   All the members of the Boards of Supervisors for
the several counties whenever such district or precinct is di-
vided, as herein provided, shall sign their name to the books
which contain the names copied from the original books for
such new district or precinct in the hands of said supervisors,
and shall duly certify that said new books contain all the
names of the persons entitled to vote in such newly estab--
lished district or precinct, such said certificate shall appear on
the blank line next following the last name in each letter of
the alphabetical list of names in the new book so transcribed,
and such said certificates shall be attested by the clerk to the
respective Boards of Supervisors.   Said Boards of Supervis-
ors shall furnish to the officers of registration and judges of
election, appointed by them for such new additional voting
precincts, full and complete sets of registry books, containing
the names of all voters already registered, duly and properly
arranged for such additional voting precincts, and for the en-
tering upon such registry books persons entitled to be newly
registered thereon; the cost of such subdivision and prepara-
tion of proper registry books shall be paid by the County
Commissioners of the counties in which such subdivision shall
be made upon proper requisition and vouchers presented by
the Boards of Supervisors of Elections.   The boundaries of
said additional precincts established under this section shall be
made known by advertisement in two newspapers in said
counties, once a week for three successive weeks, before the
first day of September in each year in which subdivision is
made.   Said newspapers to be designated as provided in
other cases under this Article where advertisements are re-
quired to be made in at least two newspapers."

Sec. 11 of the same Article declares that it shall be the
duty of the Boards of Supervisors of Elections "to appoint the
place of registration and also the *polling place* in each precinct
of their county or city" and it requires the polling place to be
"as near the centre of the voting population of the precinct

and as convenient to the greatest number of voters as is prac-
ticable."

The Legislature in authorizing the supervisors, by sec. 117A,
to subdivide any election district or any precinct having more
than six hundred voters and designate a polling place in each
subdivision *whenever in their judgment and discretion it shall
be expedient for the convenience of the voters*, evidently intended
to confer a continuing power to be exercised from time to
time as public convenience might require.   Sec. 117 not only
authorizes the Supervisors of Elections of Baltimore City to
make similar subdivisions of the election districts in that city,
but it requires them to do so before each succeeding general
registration.    It is natural to suppose that the Legislature by
the enactment of sec. 117A, intended to give to the counties
as well as to Baltimore City the benefit of a re-adjustment of
the lines of election precincts at appropriate times.   The view
which we have expressed in reference to the power of the su-
pervisors to subdivide election districts and precincts in the
counties at proper times applies with equal force to the mat-
ters of detail incident to such subdivisions provided for by sec.
117A.

We do not think that the designation, in several instances
in the latter part of that section, of the new precincts resulting
from the subdivision of election districts as "additional pre-
cincts" should lead us to the conclusion that the power con-
ferred upon the supervisors was intended to extend only to
creating additional precincts and not to changing the area or
the boundaries of those already in existence.   It would be
impossible to create an additional precinct in any election dis-
trict without changing the boundary lines of one or more of
the existing precincts.   Such changes in existing precincts
might well render it necessary for the convenience of the vot-
ers to establish new polling places therein.   The contents of
sec. 117A, taken as a whole and the evident purpose which it
is intended to serve forbid our placing so narrow a construc-
tion upon its provisions as that suggested by the appellant.

It follows as a matter of course from what we have said that

when Supervisors of Election have, in the exercise of the powers thus conferred upon them by law, subdivided an election district or precinct either by merely changing the lines of existing precincts or by creating additional ones, they are authorized to have registry books prepared for the new precincts in the manner prescribed in sec. 117A.

The bill of complaint does not allege that the action of the appellees of which it complains was not taken in good faith and according to their judgment and discretion, or that the newly appointed polling place was not as near the centre of the voting population of the second precinct and as convenient to the greatest number of voters as practicable or any other facts showing that the appellees have not acted in good faith and within their statutory powers in the premises.

Being of the opinion that the bill of complaint fails to state a case entitling the appellant to the relief for which he prays and that the Circuit Court properly dismissed the bill we will affirm the decree.

*Decree affirmed with costs*

(Decided October 19th, 1904.)